```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA

                    CHARLESTON DIVISION
```

**PHILLIP McNEAL,**

    **Plaintiff,**

v.                                  **Case No. 2:09-cv-00306**

**NELSON BROTHERS, LLC,**
**CATENARY COAL COMPANY, LLC,**
**EXPLO SYSTEMS, INC., and**
**ELITE COAL SERVICES, LLC.**

    **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

The undersigned has reviewed defendant Catenary Coal Company, LLC's ("Catenary") Motion for Summary Judgment (Docket # 73) and defendant Explo Systems, Inc.'s ("Explo") Motion for Summary Judgment Based on Plaintiff's Lack of Expert Witnesses (# 84), the latter of these two motions having been joined by defendants Nelson Brothers, LLC ("Nelson") (# 113), Catenary (# 113), and Elite Coal Services, Inc. ("Elite") (# 116).  For the reasons stated herein, the undersigned recommends that the presiding District Judge grant both of these motions.

*I. BACKGROUND*

The following facts come from the defendants' briefs, and are uncontested by the plaintiff.  Plaintiff Phillip McNeal worked for Catenary as a rock truck driver from 1993 until October 5, 2009.  Overall, he has worked in the mining industry for approximately thirty years.  In November 2006, the United States Army entered

into a contract with Explo to demilitarize munitions at Catenary's coal mine. These munitions contained the chemical 2,4,6-trinitrophenyl-methylnitramine ("tetryl"). Apparently, tetryl was inserted into pre-dug holes in the ground along with other explosives to destroy the munitions, and was allegedly used at the mine from December 2006 to February 2007. The resulting explosions had the collateral benefit of blasting away the top layer of soil and rock, known as the overburden, thus enabling miners to more efficiently reach the coal that lay just beneath the surface of the ground. As part of his job as a truck driver, the plaintiff would haul away the overburden from the site where tetryl was allegedly used and dump the overburden at a different location at Catenary's mine; to receive the overburden, the plaintiff, remaining in the cab of his truck at all times, would pull his truck near another piece of equipment that loaded the debris into the plaintiff's truck.

In February 2007, the plaintiff received a copy of materials from the Occupational Safety & Health Administration that discussed the dangers of tetryl. This information "scared [him] to death." (#84, ex. 1 at 18). Later, the plaintiff came to the belief that he was exposed to tetryl, and that the alleged exposure was responsible for various health problems. He believes that the loads of overburden and dirt that he hauled and dumped contained tetryl, that the roads he drove over contained tetryl, and that the

dust that seeped into the cab of his truck contained tetryl. However, at deposition, the plaintiff could not testify with certainty as to the frequency and intensity of any exposure to tetryl, and he has not been able to determine whether he was exposed to quantities of tetryl exceeding federal safety regulations.

## II. PROCEDURAL HISTORY

The plaintiff, by counsel, filed his amended complaint in the Circuit Court of Kanawha County on March 6, 2009. It was timely removed on March 26, 2009. (# 1). The amended complaint alleged negligence (Count I), deliberate intent (Count II), strict liability (Count III), fraud (Count IV), medical monitoring (Count V), and intentional infliction of emotional distress ("IIED") (Count VI). Counts II and IV were dismissed with prejudice on September 18, 2009. (# 35). The amended complaint also claimed past and future medical bills and medical monitoring, temporary and permanent physical injury, mental pain and suffering, permanent bodily injury, and loss of enjoyment of life as injuries. On May 26, 2010, the plaintiff's counsel moved to withdraw, (# 89), which the court granted on June 14, 2010. (# 92). The plaintiff failed to obtain new counsel by the multiple deadlines—July 12, 2010, and August 4, 2010—imposed by the court, and has since proceeded pro se.

On September 23, 2010, the undersigned held an hour long

status conference in this case. At the hearing, the plaintiff was notified about the requirements of the discovery and summary judgment processes, the requirement that the plaintiff prove causation, and the necessity of obtaining an expert witness. It was agreed to stay the case temporarily so that the plaintiff could determine whether to continue to prosecute his case, and the undersigned ordered the plaintiff to respond to all pending motions by December 3, 2010.

An additional status conference, approximately forty-two minutes long, was held on December 10, 2010, after the plaintiff failed to meet the December 3, 2010 deadline. At this hearing, the undersigned ordered this case restored to the active docket, and explained to the plaintiff the requirements of Fed. R. Civ. P. 26 with regards to expert witness reports. The plaintiff was given until December 31, 2010, to file an expert witness report that complied with the requirements of Rule 26 (# 105). On January 3, 2011, the plaintiff submitted an expert witness report from one Dr. Gideon Letz ("Letz"). This report contained the following:

> Dear Mr. McNeal:
>
> I have completed a review of the records regarding your exposure to Tetryl during the course of your employment at the Samples Mine in Southern West Virginia. Below is a preliminary report of my medical opinion concerning the relationship of your exposure to your subsequent medical problems.
>
> On March 16,2007 you were evaluated by Dr. Chuang Fang Jin, MD, MPH at The West Virginia University School of Medicine, Dept of Occupational Medicine. I found that

4

Dr. Lin's report was thorough and well reasoned and I agree with all his conclusions regarding the possible relationship between your various medical complaints and your dust exposure.

Given your description of the dust exposure and given the information in the MSHA citations, it is certainly likely that you suffered some upper respiratory, bronchial, and nasal irritation given the timing of your symptoms in relation to the exposure. You had no evidence of pulmonary damage or asthma at the time of your evaluation which was some weeks after last exposure so it is not likely that you will have any ongoing respiratory or allergic symptoms related to your mining work.

The skin rash on your arm and ribs that was observed at the time of your evaluation by Dr. Jin is not typical of that seen by workers exposed to Tetryl and is therefore unlikely to be related.

In regard to your ongoing symptoms of tremor, it is my medical opinion that this condition is unlikely related to your exposure to Tetryl dust. Such symptoms have never been reported in workers who have bad longer duration and more direct exposure to Tetryl. You were evaluated by a neurologist Dr. Barry Vaught, MD first on 03/28/2008. At that time he made certain recommendations regarding further testing to rule out various specific conditions that might cause this problem and I would certainly recommend follow-up on this. You may have what is known as "essential" tremor which means that there is no underlying disease causing the symptom but it may also be related to other medical problems that can be specifically treated.

I can provide a more detailed report if you need it but wanted to give you my "bottom-line" conclusions in time for your legal deadlines. Please do not hesitate to contact me if you need additional information or comment. I do of course reserve the right to change my opinion as expressed in this report if new information is made available for my review.

Sincerely,

Gideon Letz, MD, MPH
Board Certified Occupational Medicine

> \*\*\*
>
> References:
>
> US Dept of Health and Human Service. Toxicological Profile for Tetryl (2,4,6-Trinitrophenyl-N-methylnitramine). 1995.
>
> Bergman BB. Tetryl toxicity: a summary of ten years' experience. AMA Arch Ind Hyg Occup Med. 5(1):10-20, 1952
>
> Fischer CN, Murdock HD. Tetryl exposure: analysis of 4 years of medical experience with tetryl. Ind Med Surg. 15:428, 1946.
>
> Hardy HL, Maloof CC. Evidence of systemic effects of tetryl. Arch of Ind Hygiene. 1:545-555, 1950.
>
> Troup HE. Clinical effects of Tetryl. Br J Ind Med. 3:20-23, 1946.
>
> WRITTEN REPORT EXHIBIT ATTACHMENT
>
> 10/26/2007 Letter of Findings to Belinda S. Morton by Chuang Fang Jin MD, MPH of West Virginia University, School of Medicine, 3 pages total.

(# 106 at 3-5). The report also included a copy of Letz's curriculum vitae, a description of his fee structure, a list of his publications, and a testimony list. On January 10, 2011, Explo replied to this report. (# 107).

On January 14, 2010, the undersigned ordered the plaintiff to respond to all pending dispositive motions by January 28, 2011. (#108). This order was issued pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and included a citation to Roseboro itself. On January 20, 2010, the plaintiff provided additional materials from Letz, although he did not respond to the motions.

6

He noted that "I feel confident that I have met all of the requirements to continue my case.  Enclosed is a written report from Dr. Gideon Letz MD, MPH, who meets the requirements for an expert witness.  In this report that I received on Jan 17 2011, Dr. Letz clearly states that he feels that I was exposed to hazardous levels of Tetryl during my employment at the Samples mine from Late 2006 through early 2007."  (# 109 at 1).  The additional material was a letter that stated the following:

> Dear Mr. McNeal:
>
> You provided additional information doling our telephone conversation earlier this week, and I now have a more complete picture of the nature and extent of your exposure to Tetryl dust while working at the Samples Mine in late 2006 through early 2007.  When I wrote my initial report, I did not appreciate the extent of your exposure. I do believe that you had *significant* exposure meaning that you more likely than not had skin contact, inhalation of dust and possibly oral exposure (swallowing dust) of a degree sufficient to cause acute health effects including mucus membrane and upper respiratory irritation and possibly lung damage.  Based on what is known regarding the human health effects of Tetryl exposure, most of these effects would be expected to completely resolve within a few weeks after cessation of exposure. One exception to this would be the persistence of adult onset asthma after exposure to a pulmonary irritant or allergen.  However, you have shown no signs of asthma based on the available medical records.
>
> Your persistent fatigue is not easily explained. One possibility is that you suffered some subtle lung damage at the time of exposure that has resulted in persistent pulmonary impairment.  This could be further evaluated with complete pulmonary function testing including measured lung volumes and DLco (diffusion capacity for carbon monoxide). The symptom of fatigue might also be explained by the anxiety and depression that has resulted from your health and financial concerns. A cardiac [unclear; *sic*]

by a cardiologist.

After a thorough review of the human and animal toxicology of Tetryl, I can find no information that would link your shaking and tremor to Tetryl exposure. Even workers exposed to high levels of Tetryl during the manufacture, transport and storage for months to years showed no evidence of neurological toxicity. The most likely explanation for these symptoms is that you have coincidentally developed [an] idiopathic "essential tremor." There are drugs that have been used effectively to treat this condition which are worth trying if the tremor becomes disabling. Anxiety can aggravate tremor so I would recommend discussing this with your family doctor.

Unfortunately relatively little is known about the long term effects of acute exposure to Tetryl. There is no evidence that acute exposure results in persistent symptoms or disease. There is no evidence that Tetryl causes increased risk of cancer or reproductive damage in humans. However, this does not mean that such effects will not occur - it simply means that there is insufficient evidence to establish an increased risk.

In summary, I can conclude that you were exposed to hazardous levels of Tetryl and possibly other materials such as silica dust during your employment at the Samples Mine. Your symptoms at the time of exposure (respiratory irritation with cough, nausea and fatigue) are consistent with what is published in the medical literature. At this point there is insufficient information to establish whether or not your persistent symptoms of fatigue and tremor have any causal relationship to your Tetryl exposure in the past. Further medical evaluation(as described above) may help resolve this issue.

Please do not hesitate to contact me if you have additional questions or need clarification on the issues discussed above. I am also available to talk with your personal physician as needed.

Sincerely,

Gideon Letz, MD, MPH

Id. at 2-3. On February 4, 2011, Catenary supplemented its earlier

motion for summary judgment. (# 110). Also on this date, Explo replied to the new report from Letz. (# 111). On February 21, 2011, Nelson moved to adopt the responses and replies of its co-defendants. (#112). On February 23, 2011, the undersigned granted the motions to join filed by Catenary and Nelson. (# 113). On that same day, Elite also moved to join Explo's motion and also the responses and replies of its co-defendants. (## 114 & 115). The undersigned granted that motion earlier today. (# 116).

### III. STANDARD OF REVIEW

*A. Summary Judgment*

When federal court jurisdiction is based on diversity, the court must apply state substantive law and federal procedural law. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996). The standard for summary judgment is procedural. Therefore, the federal standard applies. Gen. Accident Fire & Life Assurance Co. v. Akzona, Inc., 622 F.2d 90, 93 n.5 (4th Cir. 1980). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion

for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256.

In the event that a nonmoving party fails to file a response to a motion for summary judgment, the district court should not simply grant the motion as unopposed.  Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993).  Rather, the moving party still must show that it is "entitled to a judgment as a matter of law." Id. at 416 (quoting Fed. R. Civ. P. 56(c)).  In other words, "failure to respond . . . does not fulfill the burdens imposed on moving parties by Rule 56." Id.  "Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Id.; see also Fed. R. Civ. P. 56(e) (stating that "if the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party").

*B. Expert Witness Reports*

When the causes of alleged injuries are determinable only in the light of scientific knowledge, expert testimony is usually necessary to prove causation. See <u>Fitzgerald v. Manning</u>, 679 F.2d 341, 350 (4th Cir. 1982). Fed. R. Civ. P. 26(a)(2)(b) provides that a party's disclosure of expert testimony

> must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>>
>> (ii) the facts or data considered by the witness in forming them;
>>
>> (iii) any exhibits that will be used to summarize or support them;
>>
>> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>>
>> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>>
>> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*IV. DISCUSSION*

*A. The Plaintiff's Claims against Catenary*

Employees in West Virginia injured on the job are only entitled to file suit against their employers in certain

circumstances; generally, employees are required to seek redress from the workers' compensation program. West Virginia Code Sections 23-2-6 and 23-4-2(d)(2)(ii). The latter provision provides that "[t]he immunity from suit . . . may be lost only if the employer or person against whom liability is asserted acted with 'deliberate intention.'"

Catenary argues that it is entitled to immunity under West Virginia Code § 23-2-6, as the plaintiff's claims alleging deliberative intent and fraud have been dismissed. The plaintiff did not respond to these arguments.

Catenary correctly argues that it is immune from the plaintiff's remaining claims, as the law at issue is clear. Accordingly, the undersigned proposes that the presiding district judge **FIND** that the plaintiff has not shown that a genuine issue of material fact exists as to his claims against Catenary. Catenary is entitled to judgment as a matter of law.

*B. The Plaintiff's Claims Against the Other Defendants*

Explo's motion for summary judgment, which Catenary, Nelson, and Elite have joined, argues that the plaintiff has failed to identify any expert witnesses, and therefore cannot prove causation. It also takes issue with other elements of the plaintiff's claims. The undersigned will address each claim in turn.

*1. The Plaintiff's Negligence and Strict Liability Claims*

Both claims for negligence and strict liability require that a plaintiff prove causation. See Tolley v. Carboline Co., 217 W. Va. 158, 161-162 ("Tolley II"). More generally, "[i]n toxic tort litigation, a plaintiff must establish by a preponderance of evidence (1) the presence of the injury-causing substance, (2) that he or she has been exposed to the substance, and (3) that the exposure has caused certain injuries." White v. Dow Chemical Co., Case No. 2:05-cv-00247, 2007 WL 6948824, 2007 U.S. Dist. Lexis 98915 (S.D. W. Va. November 29, 2007) (Goodwin, C.J.) (citing A Guide to Toxic Torts (MB), § 10.01[2](a), at 10-5 (1995)). The mere possibility of causation is not sufficient. Tolley v. ACF Industries, Inc., 212 W. Va. 548, 558 (2002); see also White v. Dow Chemical Co., 321 Fed. Appx. 266, 273 (2009) ("proof of causation must be such as to suggest 'probability' rather than mere 'possibility'"). The frequency and intensity of exposure to chemicals are among that factors that need to be considered in determining causation. See Tolley II at 163. A plaintiff must establish both general causation—that he or she was exposed to a toxic substance at a level and by a means capable of causing the alleged injury—and specific causation—that the exposure actually caused his or her injuries. Bourne ex rel. Bourne v. E.I. Dupont de Nemours and Co., Inc., 189 F. Supp.2d 482, 485 (S.D. W. Va. 2002) (Copenhaver, J.).

Explo argues that the plaintiff has wholly failed to meet this

13

burden.  With regards to general causation, it contends that the only evidence that the plaintiff has provided

> is his unsubstantiated belief that the dust in his truck cab and in and around the job site contained tetryl. Even if the dust did contain tetryl, which Defendant is not conceding, Plaintiff has no expert witness who can identify the amount, duration, intensity, and frequency of exposure. He has no expert witness who can assemble and explain the "critical" information regarding the dose or amount of exposure and the duration of exposure.

(#85 at 10).  Explo notes that, as a lay person, the plaintiff is unable to testify as to these matters, and further claims that the plaintiff's

> unsubstantiated belief that he was exposed to tetryl is wholly insufficient to satisfy his burden of proof on the element of general causation. At best, his anecdotal evidence regarding dust in the cab of his truck only amounts to a possibility or opportunity for exposure.

Id. at 11.

Similarly, Explo argues that the plaintiff has also failed to establish specific causation, as he has not provided any expert witnesses who can link the plaintiff's alleged exposure to tetryl to the plaintiff's specific maladies.  It further notes that the plaintiff testified at deposition that a doctor has never told him that he has a serious latent disease related to tetryl exposure, and that a medical monitoring plan for such a serious latent disease has never been proposed or created.  Accordingly, Explo describes the plaintiff's belief regarding his exposure to tetryl as an unsubstantiated opinion based on fear, not science.

The plaintiff does not specifically rebut these arguments; he

14

merely notes that the feels "confident" that he has met the requirements to survive summary judgment, (#109) and that there is sufficient evidence to prove his case.

The plaintiff has failed to make an evidentiary showing sufficient to establish the element of causation. See Celotex, supra. First, the reports of Letz fail to meet the requirement of Fed. R. Civ. P. 26(a)(2)(b)(I), inasmuch any findings therein are conclusory. Moreover, it is highly questionable whether the reports even support the plaintiff's case; in particular, the second report largely states that the plaintiff's ailments cannot be tied to tetryl. Even viewed in the light most favorable to the plaintiff, it is hard to say that the reports support even the insufficient mere possibility of causation, and they fail to include any discussion of the frequency and intensity of the plaintiff's exposure to tetryl. Accordingly, the undersigned proposes that the presiding district judge **FIND** that the plaintiff has failed to make an evidentiary showing sufficient to establish the element of causation as to his negligence and strict liability claims.

*2. The Plaintiff's Claim for Medical Monitoring*

A plaintiff must prove the following elements to prevail on a medical monitoring claim: "(1) significant exposure; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) which proximately caused an increased risk of

15

plaintiff contracting serious latent disease; (5) with the increased risk making it reasonably necessary for the plaintiff to undergo periodic diagnostic testing; and (6) early detection of a disease is possible through existing monitoring procedures." <u>State ex rel. City of Martinsburg v. Sanders</u>, 219 W. Va. 228, 232 (2006) (citing Syl. Pt. 3, <u>Bower v. Westinghouse Elec. Corp.</u>, 206 W. Va. 133 (1999)).

The defendants argue that this claim should be dismissed because the plaintiff has been unable to prove causation. For the reasons stated above, the undersigned agrees. Therefore, the undersigned proposes that the presiding district judge **FIND** that the plaintiff has failed to make an evidentiary showing sufficient to establish the element of causation to his medical monitoring claim.

   *3. The Plaintiff's IIED Claim*

"In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional

16

distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." Syllabus Point 3, Travis v. Alcon Laboratories, Inc., 202 W. Va. 369 (1998).

The defendants argue that this claim should be dismissed as well. They argue that the plaintiff cannot show causation, and that he has not shown that their conduct could be considered extreme and outrageous. The undersigned agrees. The plaintiff has failed to make an evidentiary showing sufficient to establish any of the elements of IIED. Therefore, the undersigned proposes that the presiding district judge **FIND** that the plaintiff has not shown that a genuine issue of material fact exists as to this claim.

## V. RECOMMENDATION

It is respectfully **RECOMMENDED** that the motions for summary judgment filed by Catenary (#73) and Explo (#84) be granted. As Catenary, Nelson, and Elite have joined Explo's motion, all charges against the defendants should therefore be dismissed.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this

17

"Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this Proposed Findings and Recommendation, mail a copy to Plaintiff and transmit it to counsel of record.

ENTER: February 24, 2011

Mary E. Stanley
United States Magistrate Judge