UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


PHILLIP MCNEAL,

    Plaintiff,

v.                                 Civil Action No. 2:09-0306

NELSON BROTHERS, LLC,
a Delaware Limited Liability, CATENARY COAL
COMPANY, LLC, a Delaware Limited Company,
EXPLO SYSTEMS, INC., a Louisiana Corporation,
ELITE COAL SERVICES, LLC, a West Virginia
Limited Company, and JOHN DOE, Corporation,

    Defendants.


MEMORANDUM OPINION AND ORDER


        Pending are two motions for summary judgment, one filed

on March 12, 2010, by Catenary Coal Company, LLC ("Catenary"),

and the other filed on May 14, 2010, by Explo Systems, Inc.

("Explo").  Explo's motion for summary judgment was joined by

Catenary and Nelson Brothers, LLC ("Nelson"), on February 23,

2011, and by Elite Coal Services, LLC ("Elite"), on February 24,

2011.

        This action was previously referred to Mary E. Stanley,

United States Magistrate Judge, who submitted her Proposed

Findings and Recommendation ("PF&R") pursuant to the provisions

of 28 U.S.C. § 636(b)(1)(B) on February 24, 2011.  The magistrate

judge recommends that both of the motions for summary judgment be granted and that all charges against defendants be dismissed.  On March 8, 2011, plaintiff, acting pro se, objected to the PF&R.

I.

Plaintiff was employed by Catenary as a rock truck driver from 1993 until October 5, 2009.[1]  In November 2006, the United States Army contracted with Explo to demilitarize munitions and to do so at Catenary's coal mine.  These munitions contained the chemical 2,4,6-trinitrophenyl-methylnitramine ("tetryl").  Apparently, tetryl was inserted into pre-dug holes in the ground, along with other explosives to destroy the munitions.  The resulting explosions had the collateral benefit to Catenary of blasting away the top layer of soil and rock, known as overburden, enabling miners to reach the coal that lay just beneath the ground surface.  Tetryl was used at the mine in this manner from December 2006 to February 2007.

In February 2007, plaintiff received a copy of materials from the Occupational Safety & Health Administration discussing the dangers of tetryl.  This information "scared [him]

---

[1] The facts set forth herein are drawn from the PF&R's proposed factual findings, to which neither party objected.

to death."  (Explo's Mot. for Summ. J., Ex. B, P. McNeal Dep. at
85:4-5).  Later, plaintiff came to believe that he had been
exposed to tetryl as a rock truck driver for Catenary and that
the alleged exposure was responsible for various illnesses and
health problems he had endured.  Plaintiff believes that the
loads of overburden and dirt that he hauled and dumped contained
tetryl, that the roads he drove over contained tetryl, and that
the dust that seeped into the cab of his truck contained tetryl.
During his deposition, plaintiff was unable to testify with
certainty as to the frequency and intensity of any exposure to
tetryl.  Nor has he been able to determine whether he was exposed
to quantities of tetryl exceeding federal safety regulations.

     On March 6, 2009, plaintiff initiated this action in
the Circuit Court of Kanawha County.  Defendants thereafter
timely removed.  In his amended complaint, plaintiff alleged that
defendants Nelson, Explo, and Elite had contracted with Catenary
for various services related to the munition-destruction process.
The complaint asserted six claims against these four entities:
Count I - Negligence; Count II - Deliberate Intent; Count III -
Strict Liability; Count IV - Fraud; Count V - Medical Monitoring;
and Count VI - Intentional Infliction of Emotional Distress
("IIED").  By order entered September 18, 2009, Counts II and IV

were dismissed with prejudice as to Explo and Catenary.  On February 23, 2010, Count II was also dismissed as against Nelson.

Shortly thereafter, defendants filed the dispositive motions now at issue.  Specifically, on March 12, 2010, Catenary moved for summary judgment on the basis that plaintiff's remaining claims against it (Counts I, III, V, and VI) were barred by West Virginia's workers' compensation program.  On May 14, 2010, Explo moved for summary judgment, contending that plaintiff's failure to identify an expert witness required dismissal of the remainder of his complaint.  Explo maintains that, inasmuch as plaintiff had failed to identify any expert witness to prove causation, he could not offer "sufficient evidence that he was either exposed to tetryl, or that exposure caused him to suffer any alleged damages."  (Explo's Mem. in Supp. at 1).  Accordingly, Explo asserts that plaintiff cannot maintain his claims of negligence, strict liability, medical monitoring, or IIED.[2]

On August 3, 2010, after plaintiff's counsel withdrew from representation of him, the court referred this action to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B).  On

---

[2] As mentioned, defendants Nelson and Elite joined Explo's motion on February 23 and 24, 2011, respectively.

4

September 23, 2010, the magistrate judge conducted an hour-long status conference, notifying plaintiff about the requirements of the discovery and summary judgment processes, his burden of proving causation, and the necessity of obtaining an expert witness.  The following day, the magistrate judge temporarily stayed the matter until December 1, 2010, so that plaintiff could respond to the pending dispositive motions.  After plaintiff failed to so respond, the magistrate judge conducted a second status conference on December 10, 2010.  The magistrate judge again explained the requirements of Federal Rule of Civil Procedure 26 with regard to expert witness reports.  The plaintiff was given until December 31, 2010, to file an expert witness report that complied with Rule 26.

On January 3, 2011, plaintiff submitted what he deemed to be an expert witness report prepared by Dr. Gideon Letz.  The report consisted of, among other things, a two-page letter from Dr. Letz to plaintiff (the "January 3 letter"), wherein Dr. Letz indicated that he had "completed a review of the records regarding [plaintiff's] exposure to Tetryl during the course of [his] employment."  (January 3 Letter at 1).  Dr. Letz also reported in the January 3 letter as follows:

> Given your description of the dust exposure . . ., it is certainly likely that you [plaintiff] suffered

some upper respiratory, bronchial and nasal irritation
given the timing of your symptoms in relation to the
exposure.  You had no evidence of pulmonary damage or
asthma at the time of your evaluation which was some
weeks after last exposure so it is not likely that you
will have any ongoing respiratory or allergic symptoms
related to your mining work.

The skin rash on your arm and ribs that was
observed at the time of your evaluation [on March 16,
2007 by Dr. Chuang Fang Jin] is not typical of that
seen by workers exposed to Tetryl and is therefore
unlikely to be related.

In regard to your ongoing symptoms of tremor, it
is my medical opinion that this condition is unlikely
related to your exposure to Tetryl dust.  Such symptoms
have never been reported in workers who have had longer
duration and more direct exposure to Tetryl.

(Id. at 1-2).  Included with the letter was a copy of Dr. Letz's
curriculum vitae, a description of his fee structure, a list of
his publications, and a testimony list.

On January 14, 2010, the magistrate judge ordered that
plaintiff respond to the pending motions for summary judgment by
January 28, 2011.  On January 20, 2010, plaintiff provided
additional materials from Dr. Letz but did not respond to the
motions.  Instead, he simply noted, "I feel confident that I have
met all of the requirements to continue my case.  Enclosed is a
written report from Dr. Gideon Letz . . ., who meets the
requirements for an expert witness.  In this report . . ., Dr.
Letz clearly states that he feels that I was exposed to hazardous

6

levels of Tetryl during my employment . . . ."  (Plaintiff Letter at 1).

        The additional material referenced by plaintiff was a second two-page letter from Dr. Letz (the "January 20 letter"). Dr. Letz indicated in the January 20 letter that plaintiff, during a recent telephone conversation, had provided additional information regarding his symptoms and that, as a result, Dr. Letz had "a more complete picture of the nature and extent of [plaintiff's] exposure to Tetryl."  (January 20 Letter at 1). Specifically, Dr. Letz asserted that he believed plaintiff "had <u>significant</u> exposure meaning that [plaintiff] more likely than not had skin contact, inhalation of dust and possibly oral exposure (swallowing dust) of a degree sufficient to cause acute health effects including mucus membrane and upper respiratory irritation and possibly lung damage."  (<u>Id.</u> (emphasis in original)).   Dr. Letz noted, however, that most health effects resulting from such exposure "would be expected to completely resolve within a few weeks after cessation of exposure."  (<u>Id.</u>). Dr. Letz then proceeded to examine each of plaintiff's asserted symptoms:

        Your persistent fatigue is not easily explained.
        One possibility is that you suffered some subtle lung
        damage at the time of exposure that has resulted in
        persistent pulmonary impairment.  This could be further

evaluated with complete pulmonary function testing
including measured lung volumes and DLco (diffusion
capacity for carbon monoxide).  The symptom of fatigue
might also be explained by the anxiety and depression
that has resulted from your health and financial
concerns.

After a thorough review of the human and animal
toxicology of Tetryl, I can find no information that
would link your shaking and tremor to Tetryl exposure.
Even workers exposed to high levels of Tetryl . . .
showed no evidence of neurological toxicity.  The most
likely explanation for these symptoms is that you have
coincidentally developed idiopathic "essential tremor."

. . .

In summary, I can conclude that you were exposed
to hazardous levels of Tetryl . . . .  Your symptoms at
the time of exposure (respiratory irritation with
cough, nausea and fatigue) are consistent with what is
published in the medical literature.  At this point,
there is insufficient information to establish whether
or not your persistent symptoms of fatigue and tremor
have any causal relationship to your Tetryl exposure in
the past.

(Id. at 1-2).


On February 24, 2011, the magistrate judge issued her

PF&R, recommending that each of the pending motions for summary

judgment be granted.  The magistrate judge first concluded that

plaintiff's claims against Catenary were barred by the workers'

compensation program, as set forth in West Virginia Code §§ 23-2-

6 and 23-4-2(d)(ii).  (PF&R at 12).  Turning to plaintiff's

claims against Nelson, Explo, and Elite, the magistrate judge

then determined that plaintiff had failed to make an evidentiary

8

showing sufficient to establish the element of causation, an element necessary to each of his remaining claims.  (PF&R at 15-17).  The magistrate judge observed that Dr. Letz's reports "fail to meet the requirement of Fed. R. Civ. P. 26(a)(2)(b)(I), inasmuch as any findings therein are conclusory."[3]  (PF&R at 15).  The magistrate judge further noted that, "[e]ven viewed in the light most favorable to the plaintiff, it is hard to say that the reports support even the insufficient mere possibility of causation, and they fail to include any discussion of the frequency and intensity of the plaintiff's exposure to tetryl." (Id.).  Accordingly, the magistrate judge recommends that summary judgment be granted in defendants' favor.

        As mentioned, plaintiff objected to the PF&R on March 8, 2011.  Plaintiff's objections concern only his claims against Nelson, Explo, and Elite.  Plaintiff does not object to the magistrate judge's recommendation that his claims against Catenary be dismissed as barred by the workers' compensation system.  Having reviewed the matter de novo, the court finds that the recommended disposition with respect to the claims against Catenary is correct.  The court, accordingly, concludes that

_____

        [3] Rule 26(a)(2)(B)(i) requires that the report of an expert witness include "a complete statement of all opinions the witness will express and the basis and reasons for them."

Catenary is entitled to summary judgment.  The objections raised
by plaintiff concerning his claims against Nelson, Explo, and
Elite warrant further discussion.

II.

In his letter-form objections, plaintiff asserts that
he is "positive that [he has] enough evidence to prove [his] case
before a jury that [defendants] are guilty in damaging [his]
health."  (Objections at 2).  Plaintiff points to the conclusions
of Dr. Jin, whom he saw in March 2007, and Dr. Letz for proof
that he "was exposed to hazardous amounts of Tetryl."[4]  (Id.).
Plaintiff also notes that other evidence, including sworn
testimony, demonstrates that the munitions he hauled "contained
chemicals that were known to be harmful."  (Id.).  Plaintiff
contends that it is "impossible to determine" the amount of
exposure inasmuch as the chemical has been removed from the coal
mine.  (Id. at 1).  Finally, he emphasizes that he became ill in
December of 2006, when he was first exposed to tetryl; that his
symptoms persisted until February of 2007, when he ceased hauling
the munitions; and that he was in excellent health prior to being
exposed.  (Id. at 1-2).  Attached with his letter-form objections

---

[4] The record appears to lack any written report of Dr. Jin.

10

are numerous articles and published guidelines concerning the ill effects of tetryl exposure.  Based on this additional evidence and the above assertions, plaintiff requests that defendants' motion for summary judgment be denied.

Plaintiff's objections and the evidence presented therewith do not overcome the deficiencies identified by the magistrate judge.  To begin, plaintiff has offered insufficient evidence to establish that he was exposed to tetryl.  The Supreme Court of Appeals of West Virginia has made clear that "[c]ritical to establishing exposure to a toxic chemical is knowledge of the dose or exposure amount and the duration of the exposure." Tolley v. ACF Indus., Inc., 212 W. Va. 548, 558, 575 S.E.2d 158, 168 (2002).  Although Dr. Letz concluded that plaintiff was exposed to hazardous levels of tetryl, his reports indicate that he reached this conclusion solely as a result of plaintiff's general representation that he was regularly exposed to the chemical.  Indeed, Dr. Letz appears to have no knowledge of any of the various factors that, according to the Supreme Court of Appeals, impact on the issue of exposure, including how often plaintiff was exposed, how close he may have been to the chemical, the type of ventilation available to plaintiff in his truck, and the level of exposure.  Id. at 169.  As the magistrate

11

judge correctly noted, Rule 26 requires that an expert give a
basis for his or her conclusions.  Fed. R. Civ. P.
26(a)(2)(B)(i).  Inasmuch as Dr. Letz has failed to explain how
he determined that plaintiff was exposed to tetryl, his expert
report is insufficient.  Accordingly, Dr. Letz's reports do not
raise a genuine issue of material fact as to whether plaintiff
was exposed to tetryl.

        Perhaps even more damaging to plaintiff's claim is his
failure to demonstrate that, assuming he was exposed to tetryl,
the exposure was the actual and proximate cause of his illness.
As noted by the magistrate judge, causation is a necessary
element to each of plaintiff's remaining claims.  See Aikens v.
Debow, 208 W. Va. 486, 491, 541 S.E.2d 576, 581 (2000)
(negligence); Morningstar v. Black & Decker Mfg. Co., 162 W. Va.
857, 883, 253 S.E.2d 666, 680 (1979) (strict liability); State ex
rel. City of Martinsburg v. Sanders, 219 W. Va. 228, 232, 632
S.E.2d 914, 918 (2006) (medical monitoring); Travis v. Alcon
Laboratories, Inc., 202 W. Va. 369, 375, 504 S.E.2d 419, 425
(1998) (IIED).[5]  Moreover, plaintiff cannot survive a motion for

--------

[5] The magistrate judge did not address the necessary
elements of Count II (deliberate intent), which remains pending
against Elite (though Elite was not his employer), and Count IV
(fraud), which remains pending against Elite and Nelson.  The
court notes that plaintiff is required to demonstrate causation

summary judgment by offering "a mere possibility of causation."
Tolley v. Carboline Co., 217 W. Va. 158, 162, 617 S.E.2d 508, 512
(2005).  Rather, he must "produce some evidence sufficient to
permit a finding of proximate cause based not on speculation, but
upon the logical inferences to be drawn from the evidence."  Id.
(quoting McHale v. Westcott, 893 F. Supp. 143, 150 (N.D.N.Y.
1995)).

        Plaintiff does not satisfy this standard.  In
particular, the reports of Dr. Letz demonstrate at most a mere
possibility of a causal relationship between plaintiff's symptoms
and any tetyrl exposure.  Dr. Letz's January 20 letter, for
instance, concludes only that plaintiff was exposed to hazardous
levels of tetryl and that his "symptoms at the time of exposure
(respiratory irritation with cough, nausea and fatigue) are
consistent with what is published in the medical literature."
(January 20 letter at 2).  Dr. Letz's opinion that plaintiff's
symptoms are consistent with those found to be associated with
tetryl exposure is insufficient to demonstrate that those
symptoms were caused by tetryl exposure.  See Rutherford v.

---

to succeed on each of these claims.  See Tolley v. Carboline Co.,
217 W. Va. 158, 162, 617 S.E.2d 508, 512 (2005) (deliberate
intent); Lengyel v. Lint, 167 W. Va. 272, 277, 280 S.E.2d 66, 69
(1981) (fraud).

<u>Huntington Coca-Cola Bottling Co.</u>, 142 W. Va. 681, 692, 97 S.E.2d
803, 809 (1957) (holding that expert's testimony as to "possible"
causal relationship is, standing alone, insufficient to establish
such relationship).  As to plaintiff's remaining symptoms,
including his complaints of persistent fatigue and tremors, Dr.
Letz concluded that there was likely no connection between these
symptoms and his tetryl exposure.  At best, then, Dr. Letz's
reports demonstrate a mere possibility of causation, which is
insufficient to satisfy plaintiff's burden of proof.

Given the lack of sufficient evidence of plaintiff's
exposure to tetryl and the inability of his expert witness to
connect plaintiff's alleged medical symptoms to the alleged
exposure, the court is constrained to agree with the magistrate
judge and conclude that defendants Nelson, Explo, and Elite are
entitled to summary judgment.

### III.

Accordingly, following a <u>de novo</u> review, the court
concludes that the magistrate judge's recommended disposition is
correct.  It is therefore ORDERED as follows:

1.   That the magistrate judge's PF&R be, and it hereby is,
     adopted and incorporated herein in its entirety;

**14**

2.   That Catenary's motion for summary judgment be, and it hereby is, granted;

3.   That Explo's motion for summary judgment, joined by Nelson, Explo, and Elite, be, and it hereby is, granted; and

4.   That this action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: March 22, 2011

John T. Copenhaver, Jr.
United States District Judge

15